Joshua MONTOYA, a minor, by his mother Esther Flores, as next friend, and Samuel Rodriguez, a minor, by his mother Maria Rodriguez, as next friend, Plaintiffs,

v.

The SANGER UNIFIED SCHOOL DISTRICT, IN the COUNTY OF FRESNO, STATE OF CALIFORNIA; James Gonzalez, Dr. Paul Cheney, Ronald G. Sterling, Yo Katayama, George R. Johnson, Paulette Doom, and Richard Wyrick, Individually and in their official capacities as Trustees of the Sanger Unified School District; Dr. J. Donald Dorough, Superintendent of the Sanger Unified School District; Roy T. Argleben, Assistant Superintendent of the Sanger Unified School District; John Haro, Principal of the Sanger High School; Ruben Jimenez, Vice–Principal of the Sanger High School, Individually and in their official capacities, Defendants.

No. CV. F–80–240–MDC

United States District Court, E. D. California.

Oct. 29, 1980.

---

George Cajiga, Nancy Marsh, Fresno–Merced Counties Legal Services, Inc., Fresno, Cal., for plaintiffs.

Harry Finkle, Stephen Thomas Davenport, Jr., Paterson & Taggart, Fresno, Cal., for defendants.

## MEMORANDUM DECISION

PRICE, District Judge.

The minor plaintiffs, through their respective mothers as next friends, invoke the jurisdiction of this court under 28 U.S.C. §§ 1343(3) and (4). Specifically, they seek relief from extended suspensions of each minor plaintiff from the Sanger Union High School pending expulsion hearings by the Board of Trustees of the school on November 5, 1980.

Plaintiffs do not ask the court to take jurisdiction of pendent state issues; however, the court must necessarily consider the statutory scheme enacted by the California legislature in answer to the due process requirements of *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

Viewing the facts most favorably to the defendants, the court makes the following findings of fact.

On October 1, 1980, Joshua Montoya (hereinafter "Joshua") was involved in a fight with several students. The altercation was of a violent nature, and it took several members of the faculty to subdue Joshua. After he was subdued, he was taken to the office of Ruben Jimenez, Vice Principal of the high school. As such, Mr. Jimenez is "responsible for primary discipline of students."

After investigating the matter, and being unable to uncover any evidence that would substantiate Joshua's claim that he did not start the altercation, Joshua was excused from Mr. Jimenez's office and was told that he was not suspended, but that the investigation was continuing.

Earlier the same day, Mr. Jimenez had received word that another student, Jeff Hagopian, had been brutally beaten by several students while standing in the lunch line at the cafeteria. This student could not identify his assailants. Mr. Jimenez asked the student to look at the yearbook when his physical condition permitted to ascertain if he could fix the identity of his assailants.

Later that day, after the injured student had returned to his home, he was again contacted by Mr. Jimenez by telephone and the injured student reported that he had identified Joshua as one of his attackers.

The next day, October 2, 1980, Mr. Jimenez sent for Joshua for further interview. After informing him that he had been identified as an assailant of Jeff Hagopian, and that since evidence exculpating him from the other fight had not come to light, Mr. Jimenez informed him that he was suspended for five (5) days. His mother, Mrs. Flores, was notified by letter on the same date of such suspension.

At an unspecified later date, Mr. Jimenez discussed this act of suspending Joshua with the principal of the high school, Mr. Haro. Mr. Haro concurred in Mr. Jimenez' recommendation that Joshua be expelled, and accordingly recommended such action to the Board of Trustees, the governing body of the high school. Notice of the pending expulsion proceedings were forwarded to Joshua and his mother, Mrs. Flores, by letter dated October 8, 1980. However, two days prior to receipt of that notification, Mrs. Flores received a notification that Joshua's original five–day suspension, which by its terms would have ended on October 8, 1980, was extended to the

date of the expulsion hearing. No conference, informal or otherwise, preceded the notice of the extended expulsion.

On September 25, 1980, Mr. Jimenez was summoned to the nurse's office by the school nurse, Miss Callahan. She reported an injury so extensive to a student that it was her opinion that the student, Craig Dye, should see a dentist immediately. Craig indicated that he was "slugged" as he left the second period P.E. class. He could not identify his assailant, and neither could his friend, Kevin Lane, who witnessed the brutal attack. The witness was asked to look through the yearbook to determine if he could identify Craig's assailant. He made three identifications, including Sammy Rodriguez (hereinafter "Sammy"). Sammy admitted that he had hit Craig, but did not mean to hit him sufficiently hard to produce the injury that apparently occurred. Mr. Jimenez promptly informed Sammy that he would be suspended and possibly involuntarily transferred or expelled. Sammy's mother, Mrs. Rodriguez, was promptly informed of Mr. Jimenez' action by telephone, both by Mr. Jimenez and by Sammy himself. By notice the same day, Mr. Jimenez notified Mrs. Rodriguez of Sammy's suspension in her primary language, namely, Spanish.

Subsequently, Sammy's case was discussed with Mr. Haro, the principal. Again, based on Mr. Jimenez' recommendation, Sammy was recommended to the Board of Trustees for expulsion. No date is fixed as to when this recommendation and concurrence occurred. However, on October 2, 1980, the day that Sammy's original suspension would have ended, Mrs. Rodriguez received notification that Sammy's suspension had been extended until his hearing on an expulsion. No conference, informal or otherwise, preceded the notice of the extended suspension.

Subsequent to this action being filed, the administration of the Sanger Unified School District has taken certain steps to possibly rectify concerns expressed by this court in chambers at the time the Amended Complaint was filed. Extended discussion of those remedial acts is not necessary, as will appear from further content of this decision.

## THE LAW

■ The case of *Goss v. Lopez, supra*, broke on the educational administrators of America as would an unexpected bombshell. Although the content of the decision will be explored further, in essence, it expressed the view of five members of the United States Supreme Court that an Ohio statute, insofar as it permitted up to 10 days suspension of a student without notice or hearing, either before or after the suspension, violated the due process clause of the United States Constitution, and invalidated each suspension.

In answer to *Goss*, the California legislature, in 1976, enacted Article 1, Part 27, Division 4, commencing with § 48900 of the Education Code. Many of these sections were extensively amended by the 1978 legislature. Briefly enumerated, the statutory scheme is as follows:

Section 48900[1] sets forth the grounds for suspension. None of the parties argue that there were not adequate statutory grounds for the initial suspension of both Joshua and Sammy. Likewise, neither party disputes that other means of correction have failed to improve the conduct of Joshua and Sammy; hence, suspension was an appropriate remedy to be resorted to under § 48900.2.

Plaintiffs center their attack on § 48903, entitled, "Suspension by Principal or Designee".

Insofar as is applicable here, § 48903(b) provides for an informal conference to precede suspension; suggests the participants of such conference; and prescribes notice to be given to the parent or guardian; and finally provides that notice shall be, insofar as is practicable, in the primary language of the pupil's guardian or parent. The content of the notice is specified in detail, including

---

1. All Code references are to the California Education Code unless otherwise noted.

the right of the pupil or parent to request a meeting with the Superintendent or the Superintendent's designee to further discuss suspension.

Two subsections of § 48903 deserve special consideration, as they are central to the constitutional attack Plaintiffs' counsel mounts in this matter:

(g) Except as provided in Section 48903.-3,[2] days of suspension from school for any pupil shall be limited to 20 schooldays in one school year, provided that, if a pupil for adjustment purposes is transferred to, or enrolled in, another regular school, an opportunity class in his school of residence, or opportunity school or class, or continuation education school or class, additional days of suspension from school following such reassignment are limited to 10 in one school year, for a total of no more than 30 days of suspension in one school year.

Subdivision (h) of § 48903 provides as follows:

(h) In a case where expulsion is being processed by the governing board, the school district superintendent or other person designated by him or her in writing may extend the suspension until such time as the governing board has rendered a decision in the action pursuant to Section 48914; provided, *that the superintendent or the superintendent's designee has determined that the presence of the pupil at the school or in the alternative school placement would cause a danger to persons or property or a threat of disrupting the instructional process.* (emphasis added)

Without reaching the constitutional issues, the basic inconsistencies of the statutory scheme become immediately apparent. Although not required by *Goss,* the California legislature has limited the power of a principal to suspend a student for any of the reasons enumerated in § 48900 "for no more than five consecutive school days."

Further, they have limited the power of any administrative officer or any combination thereof to collectively suspend a student from school for any more than 20 days in one school year.[3]

Yet, subsection (h) as employed by the administrators effectively suspended Joshua for 25 consecutive school days.

Admittedly, this result was made possible, in part, by Joshua's exercising his statutory right to ask for a continuance of his expulsion hearing. However, it should be noted that subsection (g) of § 48903 contains no exceptions on its face.

Further, and more importantly, since we do not base our ultimate conclusion on this fact, the matter is simply being called to the attention of the school board, and hopefully to the California legislature, so that this conflict can be reconciled at the next session of the legislature.

More serious, however, is the due process problem which subsection (h) of § 48903 presents. In *Goss, supra,* Justice White cautions those who must apply the mandate of *Goss,* as follows:

"We should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding 10 days. Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures. Nor do we put aside the possibility that in unusual situations, although involving only a short suspension, something more than the rudimentary procedures will be required." *Goss v. Lopez,* 419 U.S. 565, 584, 95 S.Ct. 729, 741, 42 L.Ed.2d 725, 740.

Clearly, there is sufficient factual data here, if established after notice and appropriate inquiry, to allow a superintendent or his designee to determine "that the presence of the pupil at the school or in an alternative school placement, would cause danger to persons or property, or a threat

---

**2.** § 48903.3 refers to suspension of pupils attending a continuation school which clearly has no reference here.

**3.** The court reiterates that we are not concerned here with a student of a continuation school.

of disrupting the instructional process."[4] Unfortunately, the teachings of *Goss* are that "neither the property interest in educational benefits temporarily denied, nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary." *Goss v. Lopez, supra*, at 576, 95 S.Ct. at 737. Hence, any extension of a suspension under § 48903(h) is, under *Goss*, a separate, distinct suspension requiring a separate hearing.

The court notes and approves the analysis of similar, but not identical Minnesota legislation in *Mrs. A.J. v. Special School District No. 1*, 478 F.Supp. 418 (D.Minn.1979).

█ With regard to Sammy, an important distinction must be pointed out. It appears to be the law of the Ninth Circuit that even though a suspension or expulsion procedure is constitutionally impermissible, if the student being suspended or expelled "admits all of the facts which it is the purpose of due process hearing to establish," an informal hearing is not necessary. *Black Coalition v. Portland School District No. 1*, 484 F.2d 1040, 1045 (9th Cir. 1973).[5]

Plaintiffs would have us declare Section 48903(h) to be unconstitutional on its fact. The court declines to do so, deeming it unnecessary in view of the foregoing analysis, since it adequately provides the plaintiffs with the relief they seek. *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979).

### RELIEF GRANTED

A.  Joshua Montoya

1.  Defendants .are ordered to expunge the record of Joshua Montoya with reference to extension of his suspension beyond October 8, 1980.

2.  Any extension of Joshua Montoya's original suspension must be treated as a separate suspension, and the due process requirements of *Goss v. Lopez, supra*, complied with. Any such additional suspension must also conform with all the requirements of Section 48903.

B.  Sammy Rodriguez

1.  The Superintendent of School of the defendant school district is ordered to review the records and determine if the record satisfies the requirements of *Black Coalition v. School District No. 1, supra*. If it is concluded that it does not, the record of Sammy Rodriguez is ordered expunged as to any suspension beyond October 2, 1980.

2.  Except as provided in paragraph (B)(1), supra, any extension of Sammy Rodriguez's suspension must be treated as a separate suspension, and the due process requirements of *Goss v. Lopez, supra*, must be complied with. Any such additional suspension must also conform with the requirements of § 48903.

C.  Attorneys Fees

1.  Plaintiffs' counsel entitlement to attorneys fees shall await final determination of the remaining issues raised by plaintiffs First Amended Complaint.

---

4.  Section 48903(h) cited *supra*.

5.  The school district must still deal with the limitations imposed by § 48903(g).