Marcia COLE, a Minor, By and Through Her Mother and Next Friend Josephine COLE and Teresa Walsh, a Minor, By and Through Her Mother and Next Friend, Mary Walsh, Plaintiffs,

v.

NEWTON SPECIAL MUNICIPAL SEPARATE SCHOOL DISTRICT; Dr. C.E. Holladay, Individually and in His Official Capacity as Superintendent of the Newton Municipal School District; James L. Nelson, Jr., Individually and in His Official Capacity as Principal of Newton High School; A. (Butch) Newman, Individually and in His Official Capacity as a Teacher at Newton High School, Defendants.

No. E86–0055(L).

United States District Court,
S.D. Mississippi, E.D.

June 10, 1987.

Jesse L. Evans, Jackson, Miss., for plaintiffs.

J. Leray McMamara, Jackson, Miss., Gerald, Brand, Waters & Hemlebin, Newton, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of the defendants for summary judgment or dismissal. Plaintiffs filed

timely response to the motion. The court has considered the memoranda with attachments submitted by the parties in reaching a decision.

During the 1985–86 school year, plaintiffs Marcia Cole and Teresa Walsh were students at Newton High School (NHS), which is operated by the Newton Special Municipal Separate School District (District). Plaintiffs filed suit against the District and Dr. C.E. Holladay, Superintendent of the District, James L. Nelson, Jr., Principal of NHS, and A. (Butch) Newman, a teacher at NHS, alleging that defendants had violated their rights to procedural due process and equal protection of the laws in suspending them from NHS.

## PROCEDURAL DUE PROCESS

Plaintiff Walsh contends that she was denied procedural due process when she was suspended from school for refusing to submit to a paddling, which her teacher had determined to be the appropriate punishment for her misconduct, in accordance with his policy of assertive discipline.[1] Walsh claims that she initially received a three-day suspension for refusing to submit to corporal punishment and that at the end of this three-day period, when she attempted to return to school, the suspension was extended indefinitely until she would agree to take a paddling. Defendants contend that from the outset Walsh was suspended until such time as she submitted to corporal punishment and that she was not admitted to school after her three-day absence because she still refused to be paddled. In any event, plaintiff remained out of school for another seven days until the school board met and decided that she could return to school without taking a paddling on condition that she remain in detention or isolation for the remainder of the school term, which was six days. Walsh contends that she was denied procedural due process at the initial suspension, the extension of the suspension and the imposition of isolation by the school board.

Defendants take the position that the undisputed material facts establish that plaintiff was accorded the requisite process throughout the disciplinary proceedings.

Any deprivation of a student's interest in attending school must be attended by at least minimal procedural safeguards. *Goss v. Lopez*, 419 U.S. 565, 574–76, 95 S.Ct. 729, 736–37, 42 L.Ed.2d 725 (1975). Where a suspension is for ten days or less, due process requires only that the student be given oral or written notice of the charges against him, the basis of the accusation and an opportunity to present his side of the story. *Id.* at 581–82, 95 S.Ct. at 739–40. Under either side's version, the total suspension was for ten days or less. Defendants contend that, therefore, the less stringent requirements for "short-term" suspensions are applicable and the undisputed material facts developed through the pleadings and discovery establish that these requirements were met.

But even assuming, *arguendo*, that defendants complied with due process requirements in regard to the time Walsh was excluded from school, this is not dispositive of the procedural due process issue. When Walsh returned to school after ten days, she was required to remain in a detention room, isolated from other students and excluded from her regular classes. Defendants argue that since this was not a suspension, no procedural due process protection attached to this additional disciplinary action and that, in any event, the *Goss* requirements were met. It is not clear, however, that defendants' premise is correct. Defendants' position appears to be that because plaintiff was physically present on school grounds, the due process requirements for suspensions are not applicable. The court is of the opinion that the physical presence of a student at school is not conclusive as to whether school officials are excused from according a hearing in connection with imposing in-school isolation characterized by exclusion from the classroom. The Court in *Goss* spoke of

---

1. Assertive discipline involves, *inter alia*, progressively severe sanctions for repeated acts of misconduct. Assertive discipline was not a school-wide policy at NHS; each teacher was given the option of instituting an assertive discipline policy in his or her own classroom.

suspension as "total exclusion from the educational process." *Goss*, 419 U.S. at 576, 95 S.Ct. at 737. Under certain circumstances, in-school isolation could well constitute as much of a deprivation of education as an at-home suspension. In other words, a student could be excluded from the educational process as much by being placed in isolation as by being barred from the school grounds. The primary thrust of the educational process is classroom instruction; in both situations the student is excluded from the classroom. This is not to say that any in-school detention would necessarily be equivalent to a suspension; it would depend on the extent to which the student was deprived of instruction or the opportunity to learn. It is unclear from the undisputed facts developed through pleadings and discovery whether or not the isolation at issue here involved sufficient educational deprivation to warrant its being treated as the equivalent of a suspension. Consequently, the defendants have failed to meet their burden of showing that they are entitled to judgment as a matter of law based on the undisputed material facts.

Defendants argue that even if due process requirements apply to imposing isolation or detention, the *Goss* standards nevertheless were observed. Defendants' reliance on *Goss* is misplaced, however. If the isolation is considered equivalent to suspension, then even though it was for less than ten days, when taken together with the time Walsh was physically absent from school, the total suspension would exceed ten days and therefore more formal procedures would be required. Even assuming that the hearing before the school board met *Goss* strictures, the facts certainly do not establish that the hearing given to Walsh by the board comported with the more formal procedures necessary for long-term suspensions.

**2.** Wearing of sunglasses was forbidden by school rules. Newman told Cole at the time he demanded the sunglasses that they would be returned to her at the end of the school day.

Cole admits that she left the detention room without permission and returned to class. Ac-

■ Cole alleges that her procedural rights were violated when she was suspended for one day and ordered to detention. It is undisputed that Cole was instructed to go to detention for the remainder of a school day and suspended for the following day because she disobeyed defendant Newman's order to remove a pair of sunglasses she was wearing and give the sunglasses to him.[2] Cole admits in her affidavit that she was informed of the reason for her suspension. It is not clear whether she was afforded a meaningful opportunity to give her side of the story. Nevertheless, when a student admits to the conduct giving rise to the suspension, the need for a due process hearing is obviated, since the purpose of a hearing is to safeguard against punishment of students who are innocent of the accusations against them. *See Black Coalition v. Portland School Dist. No. 1*, 484 F.2d 1040, 1045 (9th Cir.1973); *Montoya v. Sanger Unified School Dist.*, 502 F.Supp. 209, 213 (E.D.Cal. 1980). It is undisputed that Cole was punished for refusing to hand over her sunglasses as directed. She admits that she refused to obey Newman's instruction in that regard. Therefore she was accorded all the process due her.

## EQUAL PROTECTION

■ Plaintiff Walsh alleges that school officials denied her equal protection of the laws in that they punished her for conduct in which athletes and cheerleaders were permitted to engage with impunity. That is, Walsh claims she was discriminated against based upon her membership in the class of those students who are not athletes or cheerleaders. Defendants point out that Walsh is not a member of a suspect class and that no fundamental right is infringed. This, however, means only that the purported classification is not subject to strict scrutiny by the court. Any classification must still pass the requirement

cordingly, on the day she returned to school she was ordered to the detention room to complete the detention time originally assessed. It is unclear whether she actually stayed in the detention room any that day or, if she did, for how long.

that it be rationally related to a legitimate state interest. If, in fact, officials of NHS have punished non-athletes, yet purposely spared athletes committing similar infractions, the court is of the opinion that such discrimination could have no rational relation to any legitimate interest of school officials. Therefore, the issue is whether such discrimination against plaintiff has occurred. The court finds that there are genuine issues of fact regarding this question; consequently, summary judgment as to Walsh's equal protection claim is improper.

█ In regard to Cole's equal protection claim, however, the court notes that Cole, in responding to interrogatories, does not cite any example of a student who received a lesser punishment for refusing to comply with the request of a teacher. She does state that certain students were allowed to wear sunglasses, while her wearing of sunglasses was prohibited and precipitated the events leading to her suspension. However, she does not identify any classification in connection with this alleged disparate treatment. She does make a general allegation about football players receiving better treatment, but fails to identify any instance in which school officials dealt with a football player more leniently for conduct similar to that for which she was punished. Therefore, Cole's assertions in regard to her equal protection claim are insufficient to withstand a motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed. 2d 265 (1986) (summary judgment mandated against party who fails to show existence of essential element of his case); *Tasby v. Estes,* 643 F.2d 1103, 1108 (5th Cir. 1981) (black students' claims of racial discrimination in disciplinary practices failed absent showing that officials failed to discipline white students for similar miscon-

duct); *Paine v. Board of Regents,* 355 F.Supp. 199, 206 (W.D.Tex.1972), *aff'd,* 474 F.2d 1397 (5th Cir.1973) (fact that some offenders escape punishment does not deny equal protection to those punished absent purposeful selection based upon unjustifiable standard).

## PHYSICAL ABUSE

Walsh alleges that Newman grabbed her arm in order to prevent her from entering a classroom in violation of her suspension. Cole claims that Nelson grabbed her by the arm to force her to pay attention while he was talking to her.[3] Plaintiffs contend that these acts violated their rights under the fourth and eighth amendments as applied to the states by the fourteenth amendment and therefore give rise to a cause of action for damages under 42 U.S. C. § 1983. Reduced to essentials, plaintiff's fourth and eighth amendment claims constitute a charge that the alleged physical contact gives rise to a federal cause of action for deprivation of substantive due process rights, independent of and beyond the remedy provided by state tort law. Under certain circumstances, physical abuse, which would ordinarily be redressed only through state tort law, may be so egregious as to be a constitutional violation for which damages may be recovered under section 1983. *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981). Whether physical harm by a state officer rises to the level of a constitutional deprivation depends on the extent of injury inflicted, the degree of force used in proportion to the amount necessary under the circumstances, and the motives of the official. *Id.* The bottom-line inquiry is whether the officer's conduct "amounted to an abuse of official power that shocks the conscience." *Id.*

█ Accepting the allegations in the complaint as true[4] and viewing them in the

---

3. This allegation is made in Cole's deposition. In her complaint, Cole alleged that Nelson grabbed her arm to eject her from a classroom she was attempting to enter in violation of Nelson's order to go to the detention room. For purposes of determining whether the alleged act gives rise to a claim for violation of constitutional rights, the court adopts the version set

forth in the text, which is more favorable to plaintiff's position.

4. In determining whether plaintiffs have stated a claim for which relief can be granted, the court of course is to consider the allegations of the complaint. As noted above, the court considers the allegation set forth in Cole's deposi-

light most favorable to the plaintiffs, the court is of the opinion that defendants' conduct does not rise to the level of a constitutional violation. The physical contact alleged does not even approach that found actionable in *Shillingford.* In reaching this conclusion, the court considers that the action alleged, grabbing of the arm, is not of a type calculated to cause serious injury. Furthermore, unlike the clubbing of the head at issue in *Shillingford,* the acts complained of do not evince malice or an intention to cause injury. Even if serious injuries may have resulted, the nature of the contact suggests that any injuries were unintended rather than calculated and that if the force used was in fact excessive, the excessiveness came from carelessness or excess of zeal rather than from malice. *See id.* The court also notes that the actions of the defendants were related to their efforts to perform their duty of maintaining school discipline. In short, the defendants' purported acts simply do not shock the conscience and do not give rise to a cause of action under section 1983. Accordingly, these claims should be dismissed.

■ As a result, plaintiffs' remedies for the alleged assaults by defendants lie in state tort law. Plaintiffs seek to invoke the court's pendent jurisdiction and to present their state law claims for adjudication in this court. A federal court has pendent jurisdiction over a state claim when that claim and a federal claim before the court derive from a common nucleus of operative fact. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Plaintiffs' state law claims for assault and battery arise from the very acts of physical abuse which plaintiffs allege to be a violation of substantive due process rights. However, because the court has concluded that these federal claims should be dismissed, they should not serve as a basis for pendent jurisdiction over the state law claims. *See id.* at 726, 86 S.Ct. at 1139 (if federal claim dismissed, state claim pendent to it should

be dismissed as well). Therefore, unless the state-law claims derive from facts common to plaintiffs' other federal claims, the court has no jurisdiction over them. Plaintiffs' other federal claims are based on their suspensions from school. Their state-law claims are, at best, only tangentially related to the federal claims of denial of procedural due process and equal protection in connection with their suspensions. The facts giving rise to the state claims are almost completely separate from those on which the due process and equal protection claims are based. Therefore the court concludes that plaintiffs' state claims do not share a common nucleus of fact with their remaining federal claims. Accordingly, the court lacks jurisdiction to consider them.

## QUALIFIED IMMUNITY

■ The individual defendants assert the defense of qualified immunity from liability for damages. A public official is immune to suit under section 1983 for damages resulting from the performance of his duties unless he violates clearly established constitutional or statutory rights of which a reasonable person would be aware. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In determining whether defendants have qualified immunity in this case, the court considers not the defendants' actions but rather whether the right which plaintiffs allege was violated by defendants was clearly established. *See Jefferson v. Ysleta Independent School District,* 817 F.2d 303, 304–05 (5th Cir.1987); *Bonitz v. Fair,* 804 F.2d 164, 166 (1st Cir.1986). The court therefore looks only at the allegations of the complaint rather than considering whether the undisputed facts developed through depositions, affidavits and other discovery show that plaintiffs' allegations are correct or incorrect. *See Bonitz,* 804 F.2d at 167. In their complaint, plaintiffs allege, *inter alia,* that they were suspended from school without being afforded a proper hearing. The right to procedural

tion rather than that in her complaint, because Cole could readily amend her complaint to state

this more favorable version.

safeguards in connection with a suspension from school is clearly established. *See Goss*, 419 U.S. at 574–76, 95 S.Ct. at 736–37. Because the constitutional right alleged to have been violated was clearly established, defendants are not entitled to qualified immunity, and therefore their motion to dismiss on that basis should be denied.

Accordingly, for the reasons set forth above, it is ordered that

(1) Defendants' motion for summary judgment on the procedural due process and equal protection claims of Teresa Walsh is denied;

(2) Defendants' motion for summary judgment on the procedural due process and equal protection claims of Marcia Cole is granted;

(3) Defendants' motion to dismiss the constitutional claims of Teresa Walsh and Marcia Cole for physical abuse is granted;

(4) Plaintiffs' state-law claims are dismissed for want of jurisdiction;

(5) The individual defendants' motion to dismiss on the basis of qualified immunity is denied.

ORDERED this the 10th day of June, 1987.