**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-50907
Summary Calendar
_____

MIGUEL ESPARZA, by Next Friend Enrique Esparza,
by Next Friend Manuela Esparza;
PATRICIA ESPARZA, by Next Friend Enrique Esparza,
by Next Friend Manuela Esparza;
TERESA ESPARZA, by Next Friend Enrique Esparza,
by Next Friend Manuela Esparza;
ALEX GARZA, by Next Friend Maria de los Angeles Garza;
EVELIO CONTRERAS, JR., by Next Friend Graciela Contreras;
NORBERTO ESTRADA, by Next Friend Juan R. Estrada;
JESSICA ESTRADA, by Next Friend Juan R. Estrada;
MARCOS VELASQUEZ, by Next Friend Olga L. Velasquez;
RENE VELASQUEZ, by Next Friend Olga Velasquez,

Plaintiffs-Appellants,

VERSUS

BOARD OF TRUSTEES, the Board of Trustees
of the Eagle Pass Independent School District;
and
LEONEL GALAVIZ, Superintendent of
the Eagle Pass Independent School District,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas
(DR-98-CV-45)
_____

June 4, 1999

Before JOLLY, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

This appeal arises from a challenge to the mandatory school uniform policy of the Eagle Pass Independent School District. Nine students, acting through their parents, sought a temporary restraining order ("TRO") and preliminary injunction ("PI") enjoining the district[1] from enforcing the school uniform policy, declaring the policy unconstitutional, and awarding attorneys' fees. The district court denied a TRO and PI, and the plaintiffs appeal that denial.[2] Finding no reversible error, we affirm the denial of preliminary relief.

I.

A.

The district adopted a mandatory uniform policy for students on April 14, 1997. Students in all grades must wear a white top and khaki trousers or skirts to school. Parents are permitted to request a waiver based on a "written bona fide religious or philosophical objection." The policy also provides for financial assistance to students who cannot afford uniforms, and families in crisis are given priority for such assistance.

In the 1997-98 school year, all students who requested waivers received them. Before the 1998-99 school year, the plaintiffs' families submitted waiver requests identical to their 1997-98 requests, but the district denied them. With one exception, each

_____

[1] The students sued the board of trustees and the superintendent, whom we refer to collectively as the "district."

[2] The underlying merits issues have not yet been determined and are not before us in this appeal.

of the plaintiffs sought a waiver based on a philosophical objection, although each also stated that he could not afford to pay for the uniform.[3] The plaintiffs were given a two-week grace period to purchase and wear their uniforms, but at the end of the two weeks, they continued to go to school wearing street clothes.

The district follows a four-step procedure for sanctioning a student who fails to wear a uniform. After each of the first two infractions, the student receives written warnings, his parents are notified, and he receives counseling. After the third infraction, he is placed on in-school suspension for ten days. After the fourth infraction, he is assigned to the alternative education placement ("AEP") program, wherein he receives only the core courses necessary to earn the credits needed for graduation but may not participate in advanced placement courses, honors courses, or extracurricular activities.

The plaintiffs had received their first infraction notice, and most had received their second notice, when they filed their TRO motion on September 1, 1998. They sought preliminary relief to block the in-school suspension that would stem from a third infraction.

B.

---

[3] Ms. Garza is alleged to have filed a waiver request on behalf of her son Alex based on indigence alone. The Esparzas and Ms. Contereras are alleged to have filed waiver requests for their children on the basis of both financial resources and a philosophical objection. The Velasquez and Estrada plaintiffs are alleged to have filed waiver requests based on their philosophical objections alone.

3

The plaintiffs sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, asking the court to block implementation of the policy for the 1998-99 school year, claiming the mandatory school uniform policy violates their rights to procedural due process, substantive due process, and equal protection under the Fourteenth Amendment. The plaintiffs filed their complaint on September 1, 1998, seeking first a TRO and later a preliminary injunction, enjoining the district from enforcing its uniform policy pending trial on the merits. The district filed an expedited response to the TRO request on September 2. Without seeking any further briefing or holding a hearing, the court issued an order on September 3, denying a TRO and a PI.

## II.

As an initial matter, the plaintiffs argue that the court made several procedural errors in handling their motions. First, they claim the court abused its discretion when it converted the motion for a TRO to a motion for PI without first holding an adversarial hearing. Second, they contend that the court abused its discretion when it denied the motion for a PI without holding an evidentiary hearing to resolve factual disputes. Third, they assert that the court did not permit them fully to brief the legal issues involved in resolving the merits of granting a PI. As the plaintiffs acknowledge, we review the procedures employed in denying a PI for abuse of discretion. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1995).

4

A.

The plaintiffs assert that the district court must provide an adversarial hearing before converting a motion for a TRO to a motion for a PI. While conceding that the court has the discretion to convert a TRO motion to a PI motion when the other side has received notice, the plaintiffs maintain that a court must hold an adversarial hearing before it can exercise that discretion. In support, they point out that in all of the cases cited by the district court as authority for its discretion to convert, the courts granted such adversarial hearings.[4]

The plaintiffs misunderstand the holdings of these cases. None of these courts decided that a trial court must hold an adversarial hearing on the legal question of whether it can convert a TRO into a PI. Rather, they held that issuing a PI was possible because all parties had received notice and had an opportunity to brief their motion. Thus, the notice and hearing requirements relate to the district court's ability to grant a PI but not to its ability to *convert* the TRO to a PI.

In a normal TRO setting, there is neither notice nor an opportunity to be heard, and a court may grant temporary relief only pursuant to the high standards found in FED. R. CIV. P. 65(b).

_____

[4] *See*, *e.g.*, *Earley v. Smoot*, 846 F. Supp. 451, 452 (D. Md. 1994) (converting TRO to PI when application was heard in "adversary fashion with reasonable notice to defendant who appeared through counsel"); *Maine Cent. R.R. v. Brotherhood of Maintenance of Way Employees*, 652 F. Supp. 40, 41 n.1 (D. Me. 1986) (treating TRO as PI application after defendant received notice and hearing was held); *MLZ, Inc. v. Fourco Glass Co.*, 470 F. Supp. 273, 275 (E.D. Tenn. 1978) (converting TRO to PI where adverse party had notice and participated at hearing).

For instance, a TRO may provide relief only for up to ten days, and the movant must show "that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition." *See* rule 65(b). But when the adverse party has notice, the protective provisions of rule 65(b) do not control, and the court has discretion to consider granting more lasting relief under a PI. *See* 13 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 65.31, at 65-79 n.4 (3d ed. 1998); *accord* 11A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2951, at 254-55 (1995). But there is no authority requiring a district court to hold a hearing on the legal question whether it can convert a TRO into a PI.

The plaintiffs have not explained how they were prejudiced by the decision to convert their request for TRO and PI into a request for PI only. By so converting, the court actually *lowered* the plaintiffs' burden, because to obtain a TRO they would have had to meet higher standards. *See Levas v. Village of Antioch*, 684 F.2d 446, 448 (7th Cir. 1982). It is not evident how an adversarial hearing on the legal question of conversion would have benefited the plaintiffs, especially in light of their request for immediate action for a TRO *and* a PI.

B.

More persuasively, the plaintiffs aver that the district court should have held an evidentiary hearing before granting a PI and that because their motion raises significant factual disputes, the

6

court abused its discretion by denying a PI without giving them a "meaningful opportunity to be heard." *See Kaepa,* 76 F.3d at 628. The plaintiffs argue that there are four areas of factual dispute. The first two claims support their equal protection assertions: that the plaintiffs who failed to wear school uniforms because of indigence (1) were disciplined and (2) did not receive financial assistance. The second two claims support their substantive and procedural due process claims: that they were not permitted to appeal (1) their waiver request denials and (2) the punishments for their initial uniform infractions.

The district court, however, exercised its discretion to grant a PI without a hearing to resolve these factual questions, because it assumed all of the plaintiffs' alleged facts (with one exception) to be true. When material facts are not in dispute, a court may rule on a motion for a PI without an oral hearing. *See Kaepa*, 76 F.3d at 628.[5] In other words, just because some facts are disputed, the court does not have to hold a hearing before ruling on a motion for a PI unless the parties show there are material facts in dispute.[6]

The district court did not abuse its discretion when it granted the PI on the plaintiffs' due process claims, because it accepted as true the plaintiffs' claim that they were not allowed

---

[5] *Accord* 13 JAMES W. MOORE ET AL., *supra*, § 65.21[6], at 65-38 ("Rule 65(a) does not require a motion for a PI to be supported by oral testimony.").

[6] *See also Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558-59 (5th Cir. 1987) (affirming grant of PI without a hearing where adverse party failed to point to any convincing factual disputes material to the decision).

to appeal the denial of their waiver requests or their punishments for violating the uniform policy. Without any disputed facts, the court had no reason to hold a hearing.

As for the equal protection claims, because the plaintiffs failed to allege that they had applied for financial assistance, the court refused to accept as true the contention that the school had denied their requests for financial assistance and does not have enough funds for such assistance. In the absence of allegations that the plaintiffs had pursued these avenues for financial assistance, the court held that they had not presented a factual dispute as to the constitutionality of the financial assistance disbursements. We agree.[7]

## III.

The plaintiffs raised three constitutional challenges to the implementation of the uniform policy: (1) procedural due process; (2) substantive due process; and (3) equal protection. The district court denied injunctive relief because the plaintiffs had failed to demonstrate a substantial likelihood of success on the merits of any these challenges.[8] We review the district court's

_____

[7] The plaintiffs also argue that the court did not give them an "ample opportunity to present their respective views of the legal issues involved," as required by *Kaepa*, 76 F.3d at 628. The plaintiffs, however, fail to point to any specific legal issue that they did not adequately brief in the 22-page memorandum attached to their combined TRO/PI motion.

[8] To obtain a PI, the moving party must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998). Because the district court found

8

factual conclusions for clear error and its legal conclusions *de novo*. *See Hoover v. Morales*, 146 F.3d 304, 307 (5th Cir. 1998).

A.

To prevail on a procedural or substantive due process claim, the plaintiffs must show that they were deprived of a constitutionally protected property or liberty interest. *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). We agree with the district court that the plaintiffs have failed to demonstrate how the district's uniform policy deprives them of a constitutionally-protected liberty or property interest. Therefore, the plaintiffs do not meet the "substantial likelihood of success" requirement needed to win injunctive relief.

The district court held that because the plaintiffs who violated the uniform policy still received instruction in the core courses necessary to graduate, the district had not deprived them of any constitutionally-protected property interest. The plaintiffs argue that the court failed to consider the district's punishments for a third infraction: in-school suspension for ten days. We agree with the district, however, that this court has previously held that a similar in-school suspension does not constitute an unconstitutional deprivation of a property right. *See Nevares v. San Marcos Consolidated Indep. Sch. Dist*, 111 F.3d 25, 26 (5th Cir. 1997).

that the plaintiffs had failed to meet the first prong, it did not reach the others.

9

Like the students in *Nevares*, the plaintiffs are not being deprived of their access to public education, because they are not being excluded or suspended from attending classes. Rather, they are only being "transferred from one school program to another program with stricter discipline." *See Nevares*, 111 F.3d at 26.[9] The plaintiffs do not allege that any part of the district's policy would result in suspension or expulsion, the type of actions encroaching on property interests that the Supreme Court has stated may implicate due process concerns. *See Goss v. Lopez*, 419 U.S. 565 (1975).

Similarly, we agree that the plaintiffs did not show a substantial likelihood of success by alleging a property interest in gifted and talented or advanced placement courses. To establish a property interest, the plaintiffs must show that they have "more than an abstract need or desire for it . . . . [They] must, instead, have a legitimate claim of entitlement to it." *Board of Regents*, 408 U.S. at 577.

Though it is true that Texas law instructs schools to "provide an array of learning opportunities for gifted and talented students,"[10] this general admonition does not establish a constitutional entitlement to such classes. The *Nevares* court noted that state law *could* create a protected interest in a

_____

[9] The plaintiffs seek authority in *Cole v. Newton Special Mun. Separate Sch. Dist.*, 676 F. Supp. 749, 752 (S.D. Miss. 1987), which stated in *dictum* that an in-school suspension could be construed as a deprivation of education. We decline to rely on this non-binding authority, especially in light of more recent, binding precedent by a panel of this court in *Nevares*.

[10] 19 TEX. ADMIN. CODE § 89.3 (West 1998).

10

particular kind of education, such as special education, but the court refused to find that Texas had created such an interest for "particular incidents of education such as sports or advanced placement classes or attending a particular school." *Nevares*, 111 F.3d at 27 (citing *Seamons v. Snow*, 84 F.3d 1226, 1234-35 (10th Cir. 1996)). Therefore, we agree with the district court that the plaintiffs have not shown a substantial likelihood of success on their due process claims based on a right to take advanced courses.

Additionally, we also reject the plaintiffs' claim of a liberty interest based on the right to "useful knowledge" identified by the Supreme Court in *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). The district correctly points out that the *Meyer* court struck down a statute prohibiting the instruction of foreign languages as a violation of a parent's right to direct his child's education. The wholesale prohibition of a particular form of study, as was the case in *Meyer*, does not implicate the same liberty interests.

In this case, the district is imposing a temporary restriction on the plaintiffs that deprives them of enrollment in some classes. As the *Nevares* court noted, this court has "rejected arguments that there is any protected interest in the separate components of the educational process . . . ." 111 F.3d at 27 (citing *Walsh v. La. High Sch. Athletic Ass'n*, 616 F.2d 152 (5th Cir. 1980)).

Finally, the plaintiffs assert a liberty interest in their right to determine their personal appearance. Instructive in this regard is *Karr v. Tuttle*, 460 F.2d 609 (5th Cir. 1972), upholding

11

a school district's hair-length regulations.  There, we analyzed liberty interest claims along a "spectrum of importance."  *See id.* at 615.

> At one end of the spectrum are the great liberties such as speech, religion, and association specifically guaranteed in the Bill of Rights . . . .  At the other end of the spectrum are the lesser liberties that may be invaded by the state subject only to the same minimum test of rationality that applies to all state action.

*Id.*  The *Karr* court then held that hair length regulations do not "rise to the level of fundamental significance which would warrant our recognition of such a substantive constitutional right."  *Id.*

The plaintiffs have not adequately explained why clothing worn during school hours has any more of a "fundamental significance" than does the length of hair, which affect a student's appearance during other than school hours.  Moreover, the plaintiffs have not supported their assertion that the uniform policy is "arbitrary." They have not shown any reason to doubt the rationality of the district's view that the wearing of uniforms will help promote school safety, improve discipline, and enhance the learning environment.  Therefore, they have failed to show a substantial likelihood of success in demonstrating a liberty interest in their personal appearance.

Without showing a substantial likelihood of success in asserting a constitutionally-protected property or liberty interest, the plaintiffs cannot maintain a cognizable substantive or due process claim.  Therefore, we do not reach the plaintiffs' attacks on the district's school uniform procedures, and we affirm the denial of a PI regarding the due process claims.

B.

The plaintiffs assert that the district violated their equal protection rights under the Fourteenth Amendment by discriminating against them on the basis of wealth, alleging that even though they sought a waiver based on their philosophical objection *and* their indigent status, the district denied their waiver requests. We agree with the district court, however, that the plaintiffs have not provided a factual basis for their equal protection allegation.

Assuming that the district did deny some of the plaintiffs' waiver requests despite their claim of indigence, the plaintiffs have failed to allege that they had applied for, and have been denied, financial assistance. They have not contended that other similarly-situated plaintiffs have applied for, and have received, financial assistance, while they have been denied. Without this basic factual claim, the plaintiffs cannot show a substantial likelihood of success on their equal protection challenge. Therefore, we affirm the denial of their request for a PI on their equal protection claim.

AFFIRMED.

13